**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**PATRICK W. STEFFEN,**

**Plaintiff,**

**v.** **Case No. 25-C-1354**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration,**

**Defendant.**

---

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

---

Plaintiff Patrick W. Steffen filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on August 24, 2022, alleging disability beginning December 9, 2021. R. 189–203. He listed a knee problem, Methicillin-resistant Staphylococcus aureus (MRSA), depression, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and blood clots as the conditions limiting his ability to work. R. 244. After his applications were denied initially and on reconsideration, an ALJ held an administrative hearing on August 9, 2024. R. 37–61. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified.

At the time of the hearing, Plaintiff was 35 years old and he rented a room above the grill where he worked. R. 44. Plaintiff testified that he completed high school and was currently working 25 hours per week as a procurer at Marvin Grill and Lodging. *Id.* Plaintiff began working at Marvin Grill and Lodging in late-May 2024. R. 45. He previously worked at Ashley's Property Maintenance beginning in August 2023 and stopped working there around the time he began working at Marvin Grill and Lodging. R. 46. He explained that Ashley's Property Maintenance hired him to complete yardwork tasks, but he transitioned to performing construction work, such as hardscaping, redoing staircases, and building decks. R. 47. Plaintiff lifted about 50 pounds in his role. He testified that his knee was in a lot of pain as a result of performing the work, so he looked for an easier job and began working at Marvin Grill and Lodging. Plaintiff also worked for Best Edge Roofing from 2021 to 2022. He was employed as a laborer and assisted with moving heavy items and performing construction projects. R. 48. Plaintiff lifted about 50 pounds in that role as well. R. 49. In 2022, Plaintiff walked with a cane and wore a knee brace, so he picked up trash around the jobsites and did not climb on roofs. R. 54–55. As a result of the work Plaintiff performed, he requested a closed period of disability from the alleged onset date of December 9, 2021, through August 1, 2023. R. 49.

Plaintiff testified that he was unable to work beginning in December 2021 as a result of left knee pain. He complained that his knee popped and that he "couldn't pop it back in." *Id.* Plaintiff's left knee pain stemmed from a 2013 injury he sustained after falling from a ladder and subsequent ACL/MCL reconstruction surgeries. R. 1548. In January 2022, Plaintiff underwent a left knee arthroscopy, medial meniscectomy, and lateral tibial plateau chondroplasty. R. 527–28, 1114. Plaintiff testified that after the surgery, he developed an MRSA infection and he was septic twice. R. 50. He stated that his knee was quite painful because there was fluid coming out of his

knee and that he needed weekly antibiotic infusions for the MRSA infection. Plaintiff also testified that when the hardware was removed from his knee in July 2022, he had to learn how to walk again. R. 51. That was his last surgery. R. 50.

As for his mental conditions, Plaintiff testified that he takes medication for his ADHD, anxiety, and depression. R. 53. Plaintiff stated that he went to behavioral health therapy during the closed period. *Id.* During the closed period, Plaintiff lived with his parents. R. 52. His parents assisted him with getting food and getting Plaintiff to the bathroom. Plaintiff's mother drove him to his appointments. *Id.* Plaintiff moved out of his parents' house in August 2023. R. 52–53.

In response to hypothetical questions, the vocational expert testified that, whether limited to light or sedentary work, considering a person of Plaintiff's age and education with no past relevant work, even with the non-exertional limitations provided by the ALJ, there were significant numbers of jobs in the national economy such a person was capable of performing. R. 56–57.

In a 13-page decision dated October 18, 2024, the ALJ concluded that Plaintiff was not disabled. R. 20–32. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026, and that Plaintiff engaged in substantial gainful activity from October 2023 to March 2024 and May 2024 through the date of the hearing. R. 22. The ALJ noted that there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity and that the ALJ's findings address the periods Plaintiff did not engage in substantial gainful activity. R. 23. Next, the ALJ determined that Plaintiff had the following severe impairments: left knee disorder and osteoarthritis of the right knee. *Id.* He noted that Plaintiff's medically determinable mental impairments of depressive disorder, anxiety disorder, and ADHD do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities

and are therefore non-severe. *Id.* The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25.

After reviewing the record, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations:

> [T]he claimant can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can occasionally push or pull with the bilateral lower extremities. The claimant must avoid unprotected heights and dangerous moving machinery.

R. 26. The ALJ found Plaintiff had no past relevant work and that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including cashier II; cleaner, housekeeping; and bench assembler. R. 31–32. Based on these findings, the ALJ concluded that Plaintiff was not under a disability from December 9, 2021, through October 18, 2024, the date of the decision. R. 32. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted). Although a decision denying benefits need not discuss every piece of evidence,

remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

### A. Opinion Evidence

Plaintiff asserts that the ALJ erred in evaluating the medical opinion of Molly Day, M.D. Under the current regulations, an ALJ is not required to give specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinion by considering supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2). ALJs "may, but are not required to," explain how they considered the other factors. *Id.*

Dr. Day completed a physical assessment form on January 24, 2023. R. 1452–53. She opined that Plaintiff could walk one city block without rest or significant pain, could stand and walk intermittently for one hour in an eight-hour workday, could sit for eight hours, and could never carry even less than ten pounds. Dr. Day indicated that Plaintiff would need to take unlimited unscheduled breaks for unspecified times based on his needs during an eight-hour workday. R. 1452. She opined that Plaintiff would be absent from work three or four times a month as a result of his impairments or treatments. R. 1453.

The ALJ concluded that Dr. Day's opinion was unpersuasive because it was not consistent with or supported by the record. Plaintiff argues that the ALJ failed to adequately evaluate the supportability and consistency of Dr. Day's opinion. The ALJ's decision will be upheld if "substantial evidence" supports it and the court is able to trace the ALJ's path of reasoning to conduct a meaningful review. *Clifford*, 227 F.3d at 874. The ALJ need only "minimally articulate" his reasons for assessing the persuasiveness of a medical opinion. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). After reviewing the ALJ's decision in its entirety, the court concludes that the ALJ provided ample explanation to find Dr. Day's opinion unpersuasive. *See Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025) (indicating that courts are to review an ALJ's decision holistically).

The ALJ explained that, while Plaintiff's bilateral knee condition did limit his capacity for physical activity, Plaintiff retained more functioning than Dr. Day's limitations suggest. He noted that Plaintiff retained full motor function and 5/5 strength in his lower extremities, his reflexes remained 2+, his sensation and coordination were intact, his sensation was generally normal, and he was observed walking with a normal gait. R. 29.

Plaintiff asserts that the ALJ relied on cherry-picked language from treatment notes to support his conclusion. Although an ALJ need not mention every piece of evidence in the record, he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). In this case, the ALJ discussed the medical evidence in detail. R. 27–28. He acknowledged the evidence indicating that Plaintiff had certain functional limitations but that, overall, the objective medical record did not support the extreme limitations Dr. Day found. R. 27–30.

Plaintiff argues that, while the ALJ cites treatment notes indicating that Plaintiff had normal sensation, had full motor strength, had intact coordination, and walked with a normal gait, in multiple visits, Plaintiff was non-weight bearing on his left leg. He maintains that "it is contradictory to have normal findings when an individual is non-weight bearing with the left lower extremity." Dkt. No. 20 at 1. Yet, Plaintiff's treatment providers noted normal findings even though Plaintiff was non-weight bearing. For example, on June 12, 2022, although Plaintiff was to be non-weight bearing on the left lower extremity, he was noted to have very minimal pain with range of motion and had mild tenderness to palpation over the medial knee with no erythema or ecchymosis. R. 325. The explicit weighing of evidence is "precisely within the purview of the ALJ—and it is not [the court's] place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (citing *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021)).

Plaintiff also asserts that the ALJ improperly relied on two citations of normal physical findings contained in Plaintiff's mental health treatment notes. *See* R. 26, 28–30, 355–64, 1506–17. He argues that because his mental health provider was not evaluating his physical abilities

with any specificity, her findings are not indicative of his overall functional abilities. But the ALJ did not solely rely on these two mental health treatment notes to conclude that Dr. Day's opinions were inconsistent with the record. The mental health treatment record was one of several pieces of evidence indicating that Plaintiff had normal gait, sensation, and motor function. This evidence was relevant to the ALJ's assessment of the limitations caused by Plaintiff's knee condition. In short, the ALJ did not err in relying on this evidence when assessing the persuasiveness of Dr. Day's opinion.

Plaintiff argues that, at a minimum, the support for Dr. Day's opinion is equal to that of the non-examining state agency medical consultants' opinions and that the ALJ should have articulated how he considered the other § 404.1520c factors in accordance with the regulation. Section 404.1520c provides,

> When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(3).

In this case, the ALJ was not required to articulate how he considered the remaining § 404.1520c factors because he did not find that Dr. Day's opinions and the state agency medical consultants' opinions were equally well-supported and consistent with the record. The state agency consultants opined that Plaintiff could perform light exertional activity, except Plaintiff could frequently climb ladders, ropes, and scaffolds and could occasionally kneel and crouch. *See* R. 64–72, 83–93. The ALJ found the lack of limitations to Plaintiff's balance and crawling to be unpersuasive. He reasoned that not addressing these limitations is not consistent with or supported by the record. The ALJ observed that Plaintiff's degenerative conditions caused limited range of

motion and crepitus with motion bilaterally and that Plaintiff's left knee was tender and exhibited reduced stability. He explained that these symptoms support restricting Plaintiff's balancing and crawling. R. 29.

The ALJ concluded that the balance of the state agency consultants' opinions were persuasive because they were consistent with the record. *Id.* He noted that Plaintiff provided numerous imaging results of his left knee that showed the presence of degenerative changes and a long-term infection in his left knee. R. 29–30. The ALJ indicated that Plaintiff's degenerative knee changes required surgical intervention to repair damage to his ligaments and that, after the initial repair procedure, Plaintiff required debridement, irrigation, and aspiration of his left knee to manage the chronic infection. R. 30. He noted that Plaintiff ultimately required the removal of the repair hardware and additional debridement as well as antibiotic infusions. The ALJ acknowledged that Plaintiff's surgeries of his left knee caused pain, limited range of motion, and reduced stability in Plaintiff's left knee and that Plaintiff's right knee displayed osteoarthritis changes, including reduced range of motion and crepitus. He noted that Plaintiff walked with the use of a cane and a knee brace. The ALJ found that these symptoms would restrict Plaintiff's mobility and capacity to push, pull, and lift and carry objects with the use of his legs and supported limiting Plaintiff to no more than light exertional activity with limited climbing, kneeling, and crouching. He also concluded that Plaintiff's reduced range of motion, reduced stability, and pain supported limiting Plaintiff's use of his legs for pushing and pulling and that his limited mobility supported prohibiting exposure to hazards because Plaintiff could not respond quickly enough to avoid harm. *Id.*

Plaintiff does not argue that the ALJ unreasonably assessed the supportability and consistency of the state agency consultants' opinions. The ALJ explained why he found the state

agency consultants' opinions persuasive. Because the ALJ did not find that the opinions of Dr. Day and the state agency consultants were equally well-supported and consistent with the record, he did not err in declining to address the remaining § 404.1520c factors.

Finally, Plaintiff asserts that the ALJ did not adequately assess the supportability of Dr. Day's opinion that Plaintiff would be absent up to four times a month due to medical treatment. Citing Program Operations Manual System (POMS) § DI 24510.003, Plaintiff argues that the ALJ must consider the frequency of treatment and hospitalization in reaching his conclusions. POMS § DI 24510.003 states, "The RFC assessment must be based on **all** of the relevant evidence in the case record, such as . . . the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." *DI 24510.006 Assessing Residual Functional Capacity (RFC) in Initial Claims (SSR 96-8p)*, SOC. SEC., *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510006 (last visited Aug. 27, 2026).

Plaintiff conflates the standard of articulation required for assessing a claimant's RFC and weighing the medical evidence. Under the regulations, the ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). The ALJ explained why Dr. Day's extreme limitations were not supported by or consistent with the record. While Plaintiff argues that the totality of the evidence shows the frequency of his treatment regimen, he concedes that, during the closed period, he averaged about two-and-a-half visits to medical providers a month, which is less than Dr. Day's opinion that he would be absent three or four days a month due to treatment. Dkt. No. 11 at 19. Plaintiff maintains that Dr. Day's absenteeism opinion accounts for days that he would miss work due to his symptoms and impairments, but Dr. Day did not explain why Plaintiff

needed any absences or cite any evidence that supported her opinion on absences. The ALJ did not commit error in finding Dr. Day's opinions unpersuasive. Without any evidence supporting the need for three or four absences a month, it was not improper for the ALJ to omit such a limitation from the RFC. In sum, the ALJ provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (internal quotation marks and citation omitted).

**B. Closed Period**

Plaintiff asserts that the ALJ failed to consider the closed period claim as amended at Plaintiff's hearing. He argues that "[b]ecause the ALJ failed to discuss the amendment to a closed period, there is no way for a reviewing Court to know what impact this had on his ultimate RFC finding." Dkt. No. 20 at 3. But the ALJ did acknowledge that Plaintiff requested a closed period. He noted that even though Plaintiff engaged in substantial gainful activity from October 2023 to March 2024 and May 2024 through the date of the hearing, there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. R. 22–23. The ALJ stated that the findings in his decision address the period Plaintiff did not engage in substantial gainful activity, or the closed period from the alleged onset date of December 9, 2021, through August 1, 2023. *See* R. 23. The ALJ carefully recounted and considered the evidence bearing on Plaintiff's condition during this period of time. R. 27–29. The ALJ never indicated that evidence from after the closed period impacted his assessment of Plaintiff's functioning during the closed period. In short, the ALJ adequately addressed Plaintiff's entitlement to benefits during the closed period, and remand is not warranted on this basis.

To be sure, Plaintiff was unable to engage in substantial gainful activity at times following his arthroscopic surgery in January 2022 and during the periods he was undergoing treatment for

the infection. But his last surgery was in July 2022. R. 28. By September 2022, Plaintiff was walking with a normal gait. *Id.* From the ALJ's discussion of the medical record, it appears no significant treatment occurred thereafter. As a result, there was a complete lack of evidence that Plaintiff was unable to engage in substantial gainful employment throughout the year and nine months of the closed period and substantial evidence that he was not disabled.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of August, 2026.

William C. Griesbach
United States District Judge